Good morning, Your Honors. May it please the Court, Elizabeth Barros, Federal Defenders, on behalf of Mr. Mendoza. This case involves several issues, and unless the Court indicates otherwise, I intend to first address the District Court's failure to grant Mr. Mendoza a two-level reduction for acceptance of responsibility pursuant to Section 3E1.1a of the Sentencing Guidelines, and then move on to the District Court's failure to dismiss the indictment, despite the numerous violations of due process during Mr. Mendoza's deportation proceedings. First, with respect to the District Court's failure to grant Mr. Mendoza the two-level reduction for acceptance of responsibility, the Court, in that respect, applied an erroneous legal standard in coming to the conclusion that he was not eligible for the two levels. Specifically, the Court stated that it viewed acceptance of responsibility as a reward for saving the government resources. And although the Court said, I'm not punishing you for going to trial, the fact is you didn't plead guilty, and then said that numerous times, that it viewed it as a reward for saving resources. I thought it was the lack of remorse that persuaded the judge. No, not at all. I don't think the Court made any findings regarding the lack of remorse. There's nothing in the PSR suggesting that he accepted responsibility. Well, in fact, Mr. Mendoza accepted responsibility on numerous occasions. When he was arrested in the field, he admitted to being undocumented. Several hours later, after he was at the station house and after his Miranda rights were read to him, he gave a very detailed statement in which he effectively accepted all of the elements of the offense, and that statement that he provided to the arresting agent shortly after his arrest is detailed in the pre-sentence report. And then at the pre-sentence interview, he indicated that he did indicate that he had been deported, lost his papers in 2004, and admitted to alienage as well, being from El Salvador. So he did give a statement at the time of the PSR as well. He also, at the time of sentencing, told the judge that he apologized for everything and promised the judge that he would never return to the United States. We also – he also submitted to the Court letters from both his mother and his sister, which indicated that he was very sorry for his conduct, and had promised them that he had learned a big lesson through this, and had promised them he would not return to the United States. I'm sorry. So his mother and his sister write to the judge saying he has told us he's sorry? That's correct. And those were provided to him. And that counts? I think it is. It's an indication of Mr. Mendoza's remorse. He not only told the judge – Isn't it hearsay? Well – I haven't heard it from – I mean, if that were being introduced in a trial, you certainly would object to that, wouldn't you? Well, this is sentencing, and I think under – Right. But we could have heard from Mr. Mendoza personally, but we didn't hear from Mr. Mendoza. The Court did hear from Mr. Mendoza personally. Did he apologize? He did apologize to the Court specifically, and that is – Where would I find it? What did he say? He said, I'd like to apologize for everything that has happened. I will not come back. If I am deported, I will not come back. And that's at ER, page 491. And the letters that his mother and sister provided the Court are located – they are in the excerpt of record at ER, pages 28 and 30. And I think that when the district court stated – the district court even acknowledged, really, his acceptance of responsibility when the Court noted – and this is at – I'm sorry. The Court – the quote is – from the district court is, whether the government ceases and desists in prosecuting this fellow, whether the conviction is affirmed, either of those things, what's clear to me is he's gone, he's going to be deported, and he's accepted that. And so – I don't – I don't believe that to be the case, Your Honor. In Ochoa-Gaitan, this Court said, A judge cannot rely upon the fact that a defendant refuses to plead guilty and insists on his right to trial as a basis for denying an acceptance of responsibility adjustment. And that's at 265F3rd – 265F3rd at 842. The Court stated that the district court may not deny the reduction because of a defendant's choice to go to trial in spite of other manifestations of sincere contrition. In Cantrell, and that's the case decided this year by this Court, the Court again reaffirmed that a reduction for acceptance of responsibility is not only available where a defendant goes to trial to preserve legal issues, which I think is quite clear from the record in this case, but – Cantrell talks about deference, the extreme deference of a district judge in sentencing. That's what I read Cantrell to talk about mostly. Well, Cantrell also did address the issue with regards to acceptance of responsibility. And there, the Court – this Court noted that it's not only available where a defendant goes to trial to preserve legal issues, which in those circumstances it clearly has, and that's been the law in this circuit for a long time, but also a reduction is also available in cases where the defendant manifests genuine contrition for his acts, but nonetheless contests his factual guilt at trial. Now, that didn't occur here, but even in those circumstances, a reduction for acceptance of responsibility is available. And the Court noted that the primary goal is to reward defendants who are generally contrite. And that's the standard. You look at whether the defendant is contrite, whether he's accepted responsibility for his actions, and is remorseful, not whether he saved the government resources. And that's where the district court erred here. The Court in this case focused on whether or not Mr. Mendoza had saved the government resources. And while that is a legitimate inquiry in determining whether a defendant qualifies for the third point for acceptance of responsibility, as most recently pointed out by this Court in United States v. Espinosa-Cano, and I provided a 28-J letter to the Court on that case. I faxed it to the Court yesterday. The case was just recently decided, and I don't know if the Court has received that 28-J letter. Kennedy, I have not. I would like to see if you would like to comment on that, if you would like to comment on that. And what does the case stand for? Espinosa-Cano basically reaffirmed the rule that a defendant is entitled to two points for acceptance of responsibility where the defendant goes to trial, and even where – and that that reduction cannot be denied to a defendant because they exercise their constitutional right to go to trial. And contrasted that to the third point for acceptance of responsibility and said, with respect to the third point, that is a discretionary determination that's left to the government whether to move for that. And in those cases, the inquiry is whether you – whether the defendant has saved the government resources. And so I think the district court here confused the two inquiries. The district court focused on saving resources, which is the inquiry for the third point, not for the two points. In Cantrell, this Court pointed out that – and pointing to the application notes in the Guidelines, pointed out that admission of conduct is significant evidence of contrition. And here, if you look to the PSR, there's a very detailed statement by Mr. Mendoza almost immediately upon his arrest detailing and admitting to all of the conduct, in addition to all of these subsequent expressions of remorse that he made to his court and to the court directly at the time of sentencing. And so I think the fact that he did truthfully admit the conduct and he did that early on is significant evidence of his contrition in the court. This case should be remanded because the court applied their erroneous legal standard. Kennedy, I have left a little less than that. Do you want to save the time or do you want to go on to another point? Your Honor, I'm – if the Court is interested in hearing on the deportation issue, I would like to address that briefly. In this case, the Court also erred and the Court acknowledged on the record that the real reason for going to trial in this case was to attack the legality of the deportation. And that's at ER 463, which betresses our argument that Mr. Mendoza did qualify for a two-level reduction for acceptance of responsibility. The Court there said the real question was whether the proceeding was fair and whether he was really deported legally, and went on to note that the issue was whether the NTA was properly served. Which brings me to my argument that the deportation was invalid. In this case, Mr. Mendoza was a legal permanent resident of the United States for 21 years, a resident for 26 years. He had worked at the same job for 24 years of that – of his residence in the United States, had United States citizen children, a mother, siblings, and a wife. What does this go to? At his deportation proceeding, he – an attorney represented him who he had not consented to that representation. Mr. Kaufman? Yes. Mr. – he filed a notice as his attorney, but never received a signature from Mr. Mendoza consenting to that. What is the prejudice, more or less? Your Honor, the prejudice – Let's concede all of that. So what? Let's say that he had – The prejudice in this case, Your Honor, Mr. Mendoza was a legal permanent resident of the United States. He had not – no question was asked to him during the entire deportation proceeding. There was not one question asked of Mr. Mendoza during the entire deportation proceeding. Okay. Okay. Your Honor, what would have happened if he had been asked? What is it that he – what relief could he have gotten had he had a really good lawyer? Had you been there standing by his side? First of all, I – What could you have done for him? There are three things, three aspects where I think Mr. Mendoza was prejudiced. And the first is that the notice to appear wasn't properly served. And in cases like – He showed up. Yes, he showed up. So that's one you're not going to win prejudice on. Well, but it's not whether or not – the issue isn't whether or not you show up to the proceeding. There's other reasons for – for other things that the notice to appear serves, other purposes that it serves. And in cases like Flores and Mendez, this Court noted that where there's improper notice or even service of the notice, basically you put the person back in the position where they were, and Mendez, the Court actually ordered the service to bring the individual back to the United States. I don't think we're communicating where – or at least my question presupposes all of the errors you claim. You now have to show prejudice. You have to show that had things been done differently, the outcome of the proceeding would have been different. Well, under the – Saying, no, I don't want to do that, I think everything gets to be done over again, is not responsive. You don't get to do everything over again unless you can show that had things been done right, there would have been a different result. So what I really want you to focus on is that question. Just hold that thought in your mind and answer the question, what would he – what would have happened differently than what did happen if he'd gotten proper notice, if he had a really good lawyer with him present, if everything had been done according to Hoyle? There are two things. One, if he had a really good lawyer who had actually consulted with him, who had met him, who this attorney had met – I'm assuming all of these things, just get to the bottom line. What would it have been? That's – okay? One, he wouldn't be serving 57 months in a U.S. penitentiary right now because he would have understood the consequences of coming back to the United States illegally and the significance of his deportation. But secondly, he had a plausible argument that – I'm sorry. So if he had had a lawyer at the hearing, he would still have gotten deported, but on his way out the country, the lawyer would have told him, be really careful about coming back. Is that your claim of prejudice? No. That's one claim of prejudice. Is that a claim of prejudice? I think it is. I think that's something significant for the Court to consider. It's not a question of opinion. Is that one of your claims of prejudice? Your Honor, the primary – Or no. Yes. Now let's go on to the next claim of prejudice. He had a plausible argument that he was eligible for 212C relief in this case. The – But he wasn't. Your Honor, I believe that he was, and that has not been definitively resolved by the U.S. Court. He was just posterior. He wasn't eligible. He – the conduct which occurred in this case occurred prior to both AEDPA and IRIRA. His son – So? Well, I think that that's significant under – The trigger date is when you have your – when you have – when you seek the relief. And the relief was no longer available by then. I – Your Honor, I would – That's the end of the story. They can't give relief. It's not like the sentencing guidelines where you sort of go back retroactively and look at the time you committed your conduct. If the – if the official – immigration official is not capable of giving the relief, has no power, it's gone. Well, Mr. Mendes – And it's quite clear that after IRIRA, that is just not relief he could have gotten. I don't think it's quite clear, and I think St. Cyr is indicative of that. It has nothing to do with it. St. Cyr has to do with pleading guilty. That was a narrow – So what happens is when you plead guilty, you are making an assumption about the legal regime. But that has nothing to do with this case. Your Honor, St. Cyr addressed the narrow question. The question presented in St. Cyr dealt with a person who had pled guilty prior to the enactment of IRIRA. However, it relied upon Landgraf. And the facts of Landgraf, I think, are important. Because in Landgraf, the question – the individual was a victim of sexual harassment and she was seeking punitive and compensatory damages based from – based on that sexual harassment and the court looked at the conduct. Let me cut through all of this. There's been a lot of cases since 1997, not including Mr. Mendoza's case, right? Has anybody succeeded in getting 212 relief on the CRA you are now advancing? Your Honor, I – Lots of people have wanted it. Has anybody succeeded in getting that relief? No, but the Supreme Court has not decided the issue. So what you are saying is that he would have been the one. He – He would have – he would have – In 1997, somehow, even though everybody else that came through during that time and since that time has been held not to be entitled to relief, somehow this great lawyer of his was so great standing next to him that he would have gotten this relief. That's your prejudice argument. Your Honor, the question is whether or not he has a plausible – Am I understanding correctly? Yes. And the question is whether he has plausible grounds or plausible basis for relief. And in Zolotukin – Any other prejudice that you allege? You've alleged two. Your Honor – I think I understand both of them. Anything else? Well, the issue with the notice to appear, which I think I don't think – You showed up. I think that the notice to appear is what commences the proceedings and I think the Court should view that more as a jurisdictional element. And if the Court considers the notice to appear to be a jurisdictional prerequisite to the proceedings, then the Court should set aside the deportation order and the prejudice there – the inquiry, I think, stops there. But beyond that, I think that his argument for 212c relief is plausible. The question is not whether it necessarily would prevail, but whether it's plausible. And in Zolotukin v. Gonzales, this Court noted that even a defendant or a respondent in that case with a very – with an allegedly bad record and a potentially weak claim has the right to a full and fair hearing and to present that. And Mr. Mendoza was denied that in this case. Okay. Thank you. Thank you. We'll hear from the Governor. May it please the Court. Stephen Tokars, United States. Your Honor, with the Court's permission, I'd like to start off by addressing the claim where we just left. And I'd like to first note that the appellant in this case, Mr. Mendoza, received a fair trial in the court below. The record shows clearly that he was afforded everything that he should have been. The district court's decisions were proper. And for that reason, the government is respectfully requesting that this Court uphold the conviction and sentence in its entirety. Turning to the question of the validity of the prior deportation, the Court is correct. And, of course, the appellant has necessarily had to concede this on page 26 of her brief that ARERA did in fact bar relief for all aggravated felons who entered their guilty plea after the date, its effective date, which is April 1997. In this case, the guilty plea was entered in 2001. It was a guilty plea to an aggravated felony. And for that reason, on that initial basis, Mr. Mendoza would not have been eligible for any 212C relief. 212C had been eliminated at that point. It wasn't even in existence. Further, the case law shows, and I'm citing to Gonzales Valerio from this Court, that a heightened standard would have applied. So even if this Court were to consider this novel argument, which has not been upheld by any other Court, that is this novel argument that the date that the offense of conduct occurs is really the operative date, not the date of the guilty plea, the record in this case shows clearly that the defendant, Mr. Mendoza, would not have qualified for relief. Do you want to speak about acceptance of responsibility? Yes. Judge Kaczynski, the acceptance of responsibility argument in this case has to be viewed in the context of the standard of review, which, of course, this Court is aware is a clear error standard. We have said that denying a defendant a two-point departure, or whatever it's called, the two points for acceptance of responsibility because he chooses to go to trial is not appropriate. We have said that. If that's the only basis for denial, that is correct. It's not proper to only rely on the fact that a defendant has chosen to go to trial as a basis for denying acceptance. However, we don't have that case here. In fact, we have a case which, as the appellant conceded, a case where the district court actually said this is not a punishment for going to trial. That's in the record during the sentencing hearing. The reason for the district court's denial of the acceptance was multiple. It was, number one, that the defendant did choose, and this can be considered among the other reasons, that the defendant did choose to go to trial and dispute his factual guilt. That's an important point, which, in this case, the defendant did do. He was disputing his factual guilt on the elements of the crime. Number two, the court considered the fact that the defendant had lied to agents in the field when he was arrested about his citizenship. And also, the court considered the fact that when given the opportunity to make... What difference does this make whether he's from Mexico or El Salvador? I mean, I realize that this was sort of played as a big lie on his part. You know, he could have said China. The point is he's not a U.S. citizen. I mean, this is what they are concerned with. Right? Yes. For the purpose of the Border Patrol agents, they're looking, of course, to see if you're a citizen of this country. Right. So, I mean, does it really matter what he said, Mexico as opposed to El Salvador? Well, the district court did consider it as one factor because he considered it as a demonstration that the defendant has not been completely forthright throughout his conduct with the government in this case. And the first opportunity he was given to be forthright he lied. It has to be something that matters. Well, the court, you know, if you say, how are you feeling? He said, I feel good when he's, in fact, not feeling well. Well, you know, it just doesn't matter. I just don't know what the big deal is  He probably imagines that all gringos think of everything south of the border as being Mexico all the way down to the tip of South America. Right? I mean, who knows? But there isn't anything that he got out of saying Mexico when he was really from El Salvador. There's no benefit to him. There's no sort of fraud on the government that didn't help him and he didn't really prejudice the government anyway. And, Your Honor, I would note that the court did not only rely on that factor. It also noted that the defendant when given the opportunity had not made a statement accepting responsibility to the probation officer. Now what about the statement made in court that was drawn to our attention by counsel? There was one statement as the appellant pointed out. It was one statement that said, I apologize for everything. And on this record That's pretty good. I mean, what do you want him to do? Grovel? You know, spend 15 minutes groveling on the floor of the courtroom? What do we expect from these people? Well, Your Honor, my point is simply that. You know, they got convicted. They're obviously going to serve time. I mean, I don't know. How much humiliation do we put them through? Well, I think the reason that there is such deference to a district court's findings on this and that the case was developed this way is because the district court really is in the best position to evaluate the statements that are being made to it by the defendant. It's there. The court is there seeing the defendant make the statement. The court is evaluating how remorseful he really is. One statement from a cold record that I apologize for everything in the government's position is not sufficient to overcome the clear air standard here. That the district court did not commit clear air when it considered all of the factors before it, the ones that I've recounted and then made the decision. I can tell that he relied on one factor that we said he may not rely on going to trial. He's relied on one factor that sounds to me wholly irrelevant. He said El Salvador as opposed to I'm sorry he said Mexico as opposed to El Salvador and then he said he didn't really take responsibility and you're telling us well he did but he just didn't do it in a thorough and heart-rendering enough way. You know he should have said I really, really apologize. I mean I can't tell you how sorry I am about this. Boy am I sorry. I sort of don't get it. What else is there in support of Mr. Foote's finding? Well, Your Honor I think that to the fact that the only time he said that was at his last opportunity at the sentencing hearing. Well, that's why  an opportunity. Certainly. That's the very point. I mean the point is to give the judge I mean this is his chance to say I'm sorry I'm sorry it's his chance to show confession. And the district court did consider that and the court was there and heard that statement and the court took that into consideration however the court found under the totality of all these circumstances that that was not sufficient to merit an award and this is an award this is an award that the defendant has to earn by a preponderance of the evidence like any other departure adjustment at trial and the court found that he hadn't met that standard he hadn't gone above preponderance of evidence to show that he merited acceptance of responsibility and I think that's a result of the fact I'm sorry your honor I think that's a result of the fact that he not only put the government to its burden of proof but he also these other factors did not fully accept responsibility did not show complete contrition and the court should afford great difference to the district court's finding on appeal I think we ought to have coaches that teach defendants to be more concise you know drama coaches that can shed a tear bring the teddy into court I think defense counsel does an admirable job normally of that okay thank you thank you your honor if the court is interested in hearing I also have would just like to point out that thank you okay thank you your honor we would ask that the court affirm the conviction and sentence okay you're out of time I believe we'll give you a minute for rebuttal if you must have it just very briefly your honor I would just note Mr. Mendoza did nowhere in his briefs concede that he would not have there was no plausible argument that he was eligible for 212c he merely went through the history behind EDPA and IRAIRA however I would like to point out that in the government's brief nowhere did they argue that he didn't have that he was ineligible for 212c relief because of the I think we understand the information on this all right thank you all right thank you
judges: Kozinski, O'scannlain, Bybee